**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**CITY OF CLEVELAND**                                                              **PLAINTIFF**

**VS**                                              **CIVIL ACTION .4:18 cv170-DMB-RP**

**SIEMENS INDUSTRY, INC., ET. AL**                                            **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF RESPONSE TO MUELLER'S
MOTION TO DISMISS**

COMES NOW THE PLAINTIFF, in the above styled cause of action by and through counsel, and files this their Memorandum in Support of Response to Mueller's Motion to Dismiss. The Plaintiff would show all claims filed against Mueller survive a Federal Rule of Civil Procedure 12(b)(6) analysis and the instant Motion should be denied. [1]

**I.**

**FACTS**

On July 27, 2018, the City of Cleveland ("the City") filed suit against Siemens Industry Inc., ("Siemens"), Mueller Systems, LLC, ("Mueller"), and Chris McNeil ("McNeil"). Both Siemens and Mueller are diverse citizens and McNeil is non-diverse resident of Mississippi. Suit was originally filed in the Circuit Court of Bolivar County, Mississippi against Siemens and Mueller on July 11, 2018. (Dkt. 3-2). An Amended Complaint against McNeil was properly filed on or about July 18, 2018. (Dkt. 3-7). On August 15, 2018, Siemens improperly removed this cause from the Circuit

---

[1] At the outset, the City re-asserts the arguments made in its pending Motion for Additional Time or, Alternatively Motion to Stay. (Dkt. 30). The City has filed a Motion to Remand this case to the Circuit Court of Bolivar County. (Dkt. 27). It is respectfully submitted that this Court should not reach the merits of the pending Motions to Dismiss filed by both Siemens and Mueller unless and until this Court determines whether it has jurisdiction. (Dkt. 30).

Court of Bolivar County, Mississippi to this honorable Court alleging that McNeil was fraudulently joined. (Dkt. 1). Mueller joined the removal on August 21, 2018, and McNeil joined on August 16, 2018. (Dkt. 16 and Dkt. 4). The City filed a Motion to Remand on the basis that this Honorable Court does not have subject matter jurisdiction in that complete diversity is lacking. (Dkt. 27).

In the meantime, both Siemens and Mueller filed motions to dismiss. (Dkt. 21 and Dkt. 20).

This case arises out of Siemens and the City's Performance Contract Agreement (hereinafter "contract"), representations made prior to entry into the contract and the failure to remedy issues arising from the non-performance of the contract. According to the Amended Complaint, on or about May 30, 2012, Plaintiff and Defendant, Siemens, entered into the contract in which Siemens agreed to install a new water metering system throughout the entire City. A copy of the contract was attached to the Complaint and Amended Complaint. (*See* Exhibit 1 to Complaint at Dkt. 3-2 and Exhibit 1 to Amended Complaint at Dkt. 3-7).

Prior to entering into the contract, marketing and sales representatives of Siemens, including McNeil, met with City representatives and the Mayor and Board of Aldermen, in attempt to sell the City on their system. On numerous occasions, these Siemens representatives provided the City with sales and marketing material as well as a power point presentation. (*See* Marketing material attached as Exhibit 2 to Complaint and Amended Complaint Dkt. 3-2 and Dkt. 3-7).

These representations, marketing materials and statements by McNeil and Siemens were made with an intention to convince the City that the water meter system Siemens proposed to install in the City would not only save the City money, but would also be so efficient that it would result in the system more than paying for itself over time. (*See* Amended Complaint Dkt. 3-7 at ¶6). This would result from a significant increase in accurate metering of water consumed by citizens of the

City as well as fewer employees assigned to the reading of meters. *Id.* Increased collections from water consumption would, therefore, result. (*See* Marketing material attached as Exhibit 2 to Amended Complaint Dkt. 3-7). The marketing people for Siemens, including McNeil, came before the Board of Aldermen and guaranteed meter accuracy would be 98.5%, made "a 100% financial guarantee", and also guaranteed the increase in water revenue would more than pay for the project costs. *Id*.

Based on the sales presentations made to the City by McNeil and others, the contract was entered into. Under the terms of the contract, Siemens agreed and guaranteed that the City would realize an annual savings of $4,949,804.00 over a 15 year period, with the total cost of the new system being only slightly more than 3.2 million dollars. (*See* table 1.2, Exhibit C to Exhibit 1 of Contract attached to Amended Complaint Dkt. 3-7). Siemens also guaranteed water meter accuracy of 98.5%. (*See* table 5.1, Exhibit C to Exhibit 1 Contract attached to Amended Complaint Dkt. 3-7).

The new metering system was installed by Siemens and has been a miserable failure. (*See* Amended Complaint Dkt. 3-7 at ¶7). All of the representations, warranties and guaranties by Siemens in the contract have been breached, and continue to be breached with no resolution in sight. *Id*.

At Siemens' recommendation, the City entered into agreements with Mueller to acquire the equipment Siemens installed, pursuant to the terms and conditions of the contract between Siemens and the City. (*See* Amended Complaint Dkt. 3-7). Copies of the Mueller agreements with the City are attached as Exhibit "3" to the Motion to Remand (*See* Dkt. 27-3) and also included in Exhibit "1" to the Amended Complaint. The equipment and software furnished by Mueller, pursuant to its contracts with the City, is and was at the time of the purchase, defective and has not provided the

benefits to the City by way of savings as guaranteed and represented by Siemens, Mueller and McNeil. (*See* Amended Complaint Dkt. 3-7 at ¶8).

Since installation of the system, there have been numerous ongoing reporting and revenue issues. *Id*. at ¶9. The system has not accurately reported water consumption on a sustained basis. *Id*. at ¶9. Indeed, the meter reporting accuracy has continued to decline and at the present time, it is less than 50%. *Id*. at ¶9. It was represented to the City by Siemens, McNeil and other Siemens employees, both in marketing the system and in the contract itself, that the meters would in effect, self report. *Id*. at ¶9.

The meters were placed in the ground for each water consumer, and were to send a signal out to a repeater, which was to collect the water consumption data and then send that data to the City for billing. *Id*. at ¶9. Currently, over 50% of the meters are not reporting, resulting in a loss to the City of tens of thousands of dollars each month. *Id*. at ¶9. Only a bill for the water minimum charge can be sent by the City for the non reporting meters. *Id*. at ¶9.

The Amended Complaint alleges that Siemens, McNeil and Mueller were aware that the water meter system was faulty at the time they marketed the system to the City, and it continued to worsen at the time they entered into the contracts with the City. *Id*. at ¶13. Yet, they withheld such false and misleading sales information, representations, and faulty equipment information from the City. *Id*. at ¶13. The misrepresentations by Siemens, McNeil and Mueller amount to fraud, resulting in significant damage to the City. *Id*. at ¶13.

McNeil specifically told the City the system would more than pay for itself. Siemens guaranteed a revenue increase or it would "write a check. " *Id*. at ¶13. The City would "no longer need meter readers" and other cities who "do these projects" either "cancel their meter reading

4

contracts all together" or "let go the employees" who are reading meters. *Id*. at ¶13. See Email correspondence attached as Exhibit "4" to the Amended Complaint. These statements were authored and presented by McNeil and Siemens. These misrepresentations included a "guaranteed revenue stream", and a statement that: "If the tested meters do not equal the predicted revenue stream, Siemens will write a check for the lost revenue." See Amended Complaint at ¶13.

 McNeil also made additional misrepresentations to the City and MDA as evidenced by the email correspondence referenced and attached to the Amended Complaint. *Id*. at ¶13 and Exhibit "4" to Amended Complaint. In his email of May 16, 2012, he states that the City will save money because it will be able to let go of many of their current water meter readers. *Id*. The City alleges that these were all false statements made by McNeil and Siemens, who had knowledge of the falsity, and the City relied on these statements to its detriment. *Id*. at ¶13 and Exhibit "4" to Amended Complaint.

## II.

## ARGUMENT

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." ***Kocurek v. Cuna Mut. Ins. Soc'y***, 459 F. App'x 371, 373 (5th Cir. 2012) (citing ***Gregson v. Zurich Am. Ins. Co.***, 322 F.3d 883, 885 (5th Cir. 2003)).

When considering a motion to dismiss for failure to state a claim under 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in light most favorable to the plaintiff. *See* ***Baker v. Putnal***, 75 F.3d 190, 196 (5th Cir. 1996); ***Am. Waste & Pollution Control Co. v Browning-Ferris, Inc.***, 949 F.2d 1384, 1386 (5th Cir. 1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him

to relief." *Piotrowski v. City of Houston*, 51 F.3d 512, 514, (5th Cir. 1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

When considering a motion to dismiss, courts are limited to the allegations set forth in the complaint as well as any documents attached to the complaint or the motion to dismiss, if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216-17 (5th Cir. 2014) (citation omitted).

To defeat a 12(b)(6) motion, "[a plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775-76 (5th Cir. 2015) (internal quotation marks and citations omitted). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A pleading must contain: (1) a short and plain statement showing that the pleader is entitled to relief, and (2) a demand for judgment. Fed. R. Civ. P. 8(a). Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The notice pleading standard relies on discovery to define disputed facts and summary judgment to dispose of unmeritorious claims. *Swierkiewicz*, 534 U.S. at 512; *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993).

The general notice pleading requirements apply to all civil actions, except for averments of fraud, mistake, which must be pled with particularity. Fed. R. Civ. P. 9(b). Because of the general notice pleading requirements, dismissal is warranted only when no relief could be granted on any set of facts consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definitive statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. *Beanal v. Freeport-McMoran, Inc*., 197 F.3d 161, 164 (5th Cir. 1999); *Swierkiewicz*, 534 U.S. at 514. Finally, a complaint that contains only a "bare bones" allegation that a wrong occurred and does not plead any facts giving rise to the injury, does not provide adequate notice. *Id.*; *Walker*, 904 F.2d at 277.

## I.    The City has Properly Plead Claims Against Mueller.

Mueller argues the claims against it should be dismissed as the City has failed to give it "fair notice" of the claims being made against it under Federal Rule of Civil Procedure 8(a)(2). Mueller argues the Complaint, taken as a whole, "fails to state a plausible claim that Mueller caused the alleged damages." (*See* Dkt. 25 at p. 4). Mueller supplied the equipment which is defective. The defective equipment is causing the City to lose thousands of dollars in lost revenue daily. Mueller's role in this action is adequately alleged in the Amended Complaint as are the damages caused by Mueller's defective equipment. As such, this Motion should be denied.

The Amended Complaint alleges as follows:

**Paragraph 8.**

At Siemens' recommendation, the City entered into agreements with Defendant, Mueller Systems, LLC, to acquire the equipment Siemens installed, pursuant to the terms and conditions of the contract between Siemens and the City.

Copies of the Mueller agreements with the City are attached hereto as Exhibit "3" and also included in Exhibit "1". The equipment and software furnished by Mueller, pursuant to its contracts with the City, is and was at the time of the purchase, defective and has not provided the benefits to the City by way of savings as guaranteed and represented by Siemens and McNeil.

**Paragraph 9.**

Since installation of the system, there have been numerous ongoing reporting and revenue issues. The system is not accurately reporting water consumption on a sustained basis. Indeed, the meter reporting accuracy has continued to decline and at the present time, it is less than 50%. It was represented to the City by Siemens, McNeil and other Siemens' employees, both in marketing the system and in the Agreement itself, that the meters would in effect, self report. The meters were placed in the ground for each water consumer, and were to send a signal out to a repeater, which was to collect the water consumption data and then send that data to the City for billing. Currently, over 50% of the meters are not reporting, resulting in a loss to the City of tens of thousands of dollars each month. Only a bill for the water minimum charge can be sent by the City for the non reporting meters.

**Paragraph 10**

Plaintiff has had numerous meetings and discussions with representatives of Siemens and Mueller in an effort to resolve the problems. Not only have Siemens and Mueller made no effort to perform their obligations under the Agreement, they have not even investigated the problems.

**Paragraph 12**

Siemens and Mueller are in total breach of their contracts with the City. The system installed has never functioned as represented and agreed, and the warranties and guaranties in the Agreement between the City and Siemens and the City and Mueller have not been fulfilled as required. As a result, Plaintiff has been damaged and Siemens and Mueller are liable for that damage, not only in the past, but for the future, as well, including, but not limited to loss of revenue for water usage by City water customers and the cost of installation of a new metering system to replace the existing malfunctioning system.

**City Response:** In paragraphs 8-12 of the Amended Complaint, the City sets the stage and then

alleges a breach of contract action against both Siemens and Mueller resulting in damage to the City.

The City alleges the meter system was installed with warranties and guarantees which have not been

fulfilled and how the City has been damaged, all of which are the appropriate elements for a breach of contract claim. Mueller's contract was attached to the City's Amended Complaint as Exhibit "3".

Here, the City has properly alleged a breach of the contract action against Mueller. "The elements of a breach of contract claim in Mississippi are: (1) the existence of a valid contract and (2) breach by the defendant." *Idom v. Natchez-Adams Sch. Dist.*, 115 F. Supp. 3d 792, 805 (S.D. Miss. 2015) (internal quotation marks omitted); *Burchfield v. Foremost Ins. Grp*., 2017 U.S. Dist. LEXIS 45456, *9, 2017 WL 1167278. Mueller agreed to provide water meter equipment for the City's new water meter system. That system is not working. The City has been damaged as it can only minimum bill for the non-reporting meters. Per the overarching contract terms with Siemens, the water meter system would (1) more than pay for itself; (2) increase the City's water revenue and (3) obviate the need for water meter readers. The City has alleged the contract between the City and both Siemens and Mueller existed and has been wholly breached as the promises made by these companies have not been fulfilled. (*See* Amended Complaint Dkt. 3-7 pp. 1-3).

### Paragraph 13

On information and belief, Siemens, McNeil and Mueller were aware that the water meter system was faulty at the time they marketed the system to the City, and at the time they entered into the contracts with the City. Yet, they withheld such false and misleading sales information, representations, and faulty equipment information from the City. The misrepresentations by Siemens, McNeil and Mueller amount to fraud, resulting in significant damage to the City. McNeil specifically told the City the system would more than pay for itself. Siemens guaranteed a revenue increase or it would "write a check. " The City would "no longer need meter readers" and other cities who "do these projects" either "cancel their meter reading contracts all together" or "let go the employees" who are reading meters. (See Email correspondence attached as Exhibit "4" and Exhibit "2"). Some of these fraudulent misrepresentations made to the City are included in Exhibit 2 and were authored and presented by McNeil and Siemens and such representations are incorporated herein by reference. These misrepresentations included a "guaranteed revenue stream", and a statement that: "If the tested meters do not equal the predicted revenue stream,

9

Siemens will write a check for the lost revenue." (See Exhibit 2). McNeil also made additional misrepresentations to the City and MDA as evidence by the email correspondence incorporated herein by reference and attached as Exhibit 4. These were all false statements made by McNeil and Siemens, who had knowledge of the falsity, and the City relied on these statements to its detriment. At a minimum, the misrepresentations were material and constitute a breach of the contracts.

**City Response:**          In this paragraph, the City alleges fraud/intentional misrepresentation against both Siemens and Mueller resulting in damage to the City. The City alleges Mueller knew its system was not going to perform as promised and sold it to the City anyway. The City alleged it relied on the representations and how the City has been damaged, all of which are the appropriate elements for a intentional misrepresentation/fraud.

Mueller's warranty was attached to the City's Amended Complaint as Exhibit "3". In the contract with Siemens, Siemens guarantees the performance of the meters for one year and then passes along the manufacturing warranty to the City. (*See* Scope of Work Exhibit "A" to contract with Siemens attached to Amended Complaint Dkt. 3-7 Page Id#1783).

To demonstrate a prima facie case of intentional misrepresentation, a plaintiff must show, by clear and convincing evidence, (1) a representation (2) that is false (3) and material (4) that the speaker knew was false or was ignorant of the truth (5) combined with the speaker's intent that the listener act on the representation in a manner reasonably contemplated (6) combined with the listener's ignorance of the statement's falsity (7) and the listener's reliance on the statement as true (8) with a right to rely on the statement, and (9) the listener's proximate injury as a consequence. ***Southeastern Med. Supply, Inc. v. Boyles, Moak, and Brickell Ins. Inc.***, 822 So. 2d 323 (P39) (Miss. Ct. App. 2002). Here, the City alleged Siemens/Mueller sold it a system which was promised to work even more efficiently than the City's previous system and Siemens/Mueller knew the system

10

would not perform as promised. The City relied on this representation and now has been damaged because of the non-performance. As such, the City states a prima facie case of fraud.

**Paragraph 14**

Siemens, McNeil and Mueller were negligent in their sales presentation and representations to the City, in the promotion of, sale and installation of the system and in failing to correct the problems encountered in the system. This negligence, given the knowledge of the Defendants, and the continued and ongoing multiple failures also amounts to gross negligence entitling the Plaintiff to exemplary damages. This negligence and gross negligence proximately caused damage to the City.

**City Response:** The elements of negligence are: (1) duty, (2) breach, (3) factual and proximate cause, and (4) damage. ***Duckworth v. Warren***, 10 So. 3d 433, 439 (Miss. 2009). It is the failure to use reasonable care in the performance of a contract that breaches a duty in tort, not the mere failure to perform. ***Montgomery v. CitiMortgage, Inc.***, 955 F. Supp. 2d 640, 648 (S.D. Miss. 2013). (citing ***Poppelreiter v. GMAC Mortg., LLC***, No. 1:11cv8, 2011 U.S. Dist. LEXIS 74411, 2011 WL 2690165, at *3 (N.D. Miss. July 11, 2011)) "Under Mississippi law, '[a] contract creates a reasonable duty of care in fulfilling one's contractual obligations.'"); ***Id.*** at 640 ("CitiMortgage was also required to employ due care in the processing of the Plaintiffs' request to lower their mortgage payments and in the resulting loan modification process undertaken by the parties."). Put differently, the tort duty founded on contract is breached not by failing to perform the contract obligation at all but by causing damages due to carelessness in the performance of the contract.

Here, the City has properly alleged a breach of duty against Mueller as it not only was negligent in providing a defective product, but has additionally been negligent in its ongoing duties to repair the product. Mueller had a duty to provide a product that worked, it breached the duty and the breach is a proximate cause of the City's damages. While Mueller argues the City has not

11

sufficiently alleged the Mueller meters are causing the City damage, such an argument is disingenuous at best. The Mueller meter performance lies at the heart of this lawsuit. More than 50% of the City's meters are failing to perform as promised. The meters are malfunctioning and that malfunction is the proximate cause of the City's damages to date.

Further, Mueller has breached its duty in the ongoing replacement of its defective product. Despite the fact that more than 50% of the City's meters are not reporting, Mueller failed to timely investigate the issues and gave the City no choice but to bring this lawsuit. Mueller provided a defective product. All of these facts are set forth clearly in the Amended Complaint. This is not a case where 1 or 2 or even 20 meters have failed the City, but where thousands of meters have failed. Mueller then failed to act reasonably in investigating and repairing these issues.

Further, for the claim of negligent misrepresentation a plaintiff must show: (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance. *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002).

Like the claim for intentional misrepresentation, the City alleged Siemens/Mueller sold it a system which was promised to work even more efficiently than the City's previous system. Mueller should have exercised that degree of diligence and expertise the public is entitled to expect of Mueller, especially given the fact that this is a new City-wide system designed to assist the City in recouping more water dollars in order to pay for the new meters. The City relied on this representation and now has been damaged. As such, the City states a *prima facie* case of negligent

12

misrepresentation.

**Paragraph 15**

The Defendants are liable and responsible also as they are in breach of not only the express warranties but are in breach of the implied warranties of merchantability and fitness for a particular purpose under §§ 75-2-314 and 75-2-315.

**City Response:** In this paragraph, the City alleges a breach of express warranties, breach of the implied warranties of merchantability and fitness for a particular purpose under §§ 75-2-314 and 75-2-315. These causes of action include various elements, all of which have been properly plead and are discussed in more detail in Sections IV, V, and VI of the brief below.

**II.)    The City Alleged Fraud with Particularity and all Necessary Elements.**[2]

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Tuchman v. DSC Communications Corp*., 14 F.3d 1061, 1067 (5th Cir.1994). Although the particularity demanded by Rule 9(b) differs with the facts of each case, *see Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992), a plaintiff pleading fraud must set forth "the who, what, when, and where … before access to the discovery process is granted." *Williams v. WMX Technologies, Inc*., 112 F.3d 175, 178 (5th Cir.1997).

While Mueller argues the City has not alleged fraud with particularity, the City outlined the who, what, when, and where regarding the fraud:

Paragraph 13 of the Complaint states as follows:

On information and belief, Siemens, McNeil and Mueller were aware that the water meter system was faulty at the time they marketed the system to the City, and at the

---

[2]Because the City has sufficiently alleged fraud with particularity, its Amended Complaint states a plausible claim for punitive damages. *See* Miss. Code Ann. § 11-1-65 (asserting that punitive damages may be awarded if claimant proves by clear and convincing evidence that defendant against whom punitive damages are sought committed actual fraud).

13

time they entered into the contracts with the City. Yet, they withheld such false and misleading sales information, representations, and faulty equipment information from the City. The misrepresentations by Siemens, McNeil and Mueller amount to fraud, resulting in significant damage to the City. McNeil specifically told the City the system would more than pay for itself. Siemens guaranteed a revenue increase or it would "write a check. " The City would "no longer need meter readers" and other cities who "do these projects" either "cancel their meter reading contracts all together" or "let go the employees" who are reading meters. (See Email correspondence attached as Exhibit "4" and Exhibit "2"). Some of these fraudulent misrepresentations made to the City are included in Exhibit 2 and were authored and presented by McNeil and Siemens and such representations are incorporated herein by reference. These misrepresentations included a "guaranteed revenue stream", and a statement that: "If the tested meters do not equal the predicted revenue stream, Siemens will write a check for the lost revenue." (See Exhibit 2). McNeil also made additional misrepresentations to the City and MDA as evidence by the email correspondence incorporated herein by reference and attached as Exhibit 4. These were all false statements made by McNeil and Siemens, who had knowledge of the falsity, and the City relied on these statements to its detriment. At a minimum, the misrepresentations were material and constitute a breach of the contracts.

The City attached Exhibit 2 and 4 to the Amended Complaint as well as alleged facts within the body of the Amended Complaint which state the following regarding the fraud:

| | |
|---|---|
| Who was Involved? | Chris McNeil and other Siemens' employees |
| What was stated? | Specific promises of revenue streams coming to the City and a reduction in operations costs, promised checks would be written when the promised revenue did not occur; specific representations of the systems' success |
| When? | These misrepresentations were made during City board meetings and other correspondence/presentations as shown in Exhibit 2 and 4 to the Amended Complaint. |
| Where? | Misrepresentations made in the correspondence attached as Exhibits 2 and 4 to the Amended Complaint as well as in City board meetings |

Courts have found in considering the adequacy of 9(b) pleadings, "[a] number of courts ... have recognized that the heightened pleading standards of Rule 9(b) should be relaxed upon a showing by the plaintiff that he or she is unable, without pretrial discovery, to obtain essential information peculiarly in the possession of the defendant." *Schouest v. Medtronic, Inc.*, 2014 WL

14

1213243, at *14 (S.D. Tex. 2014). Siemens brought Mueller to the City. As such, Siemens and Mueller will be in the best position to provide the City with essential information for this claim. Upon information and belief, the system sold to the City was not performing as promised when sold. This Court should allow the fraud claim to remain and afford the City an opportunity to conduct discovery from both of these large scale companies as to the issue of their knowledge of the system's failings when it was implemented and sold.

### III.   The Economic Loss Doctrine Does Not Bar the City's Tort Claims.

Mueller also alleges the Economic Loss Doctrine bars the negligence claim.   The Economic Loss Doctrine has no application against a recovery against Siemens, nor the other Defendants.   The only Mississippi decision discussing the Economic Loss Doctrine in Mississippi is the Court of Appeals decision of *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384 (Miss. Ct. App. 1999).   In that decision, the Court of Appeals held, "strict liability and negligence claims are barred under the economic loss doctrine as the only damage sustained was to the product itself."   ***Id.*** at 387. In the *Ford Motor Co.* decision, the damage was to the product itself.

The holding in *Ford Motor Co.* applies the Economic Loss Doctrine for a recovery of damages because the product itself is damaged or destroyed.   In the present cause, the City did not bring a products liability suit under the Mississippi Products Liability Act.   Indeed, nowhere in the City's complaint does the term "product liability" even occur.

The City is not seeking to recover for damages **to the water meters**, but rather for damages **resulting from the water meters not performing** as represented.   Indeed, this distinction for the application of the Economic Loss Doctrine was recognized by the Fifth Circuit in *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 274 (5th Cir. 2007) and this Honorable Court is

15

bound by the Fifth Circuit's own holding. The Fifth Circuit held the Economic Loss Doctrine only applied in products liability suits and not to a duty created by a contract. According to the Fifth Circuit:

> DLA points to no Mississippi case law applying this doctrine outside of the realm of products liability. In this diversity case, we seek to apply the law of Mississippi as we believe the Supreme Court of Mississippi would. We therefore decline to apply the economic loss doctrine to this tort case **involving a duty shaped by contract.**

475 F.3d at 274 (citations omitted) (emphasis added).

Based upon the Fifth Circuit's holding in *Lyndon*, this Honorable Court must hold that the Economic Loss Doctrine does not prevent any recovery against Mueller. The City is not claiming damage to the water meters, but rather claims breach of warranty, negligence and misrepresentation. The Economic Loss Doctrine simply has no application in the present cause of action.

## IV.    The City has Alleged a Claim for Breach of an Express Warranty

An express warranty is "any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product." ***Little v. Smith & Nephew, Inc.***, 2015 U.S. Dist. LEXIS 75666, at *28 (N.C. Miss. June 11, 2015) (citations omitted). Further, "[f]ault does not need to be shown to establish a breach." ***Id.*** The plaintiff only needs to show that the product did not live up to its warranty and their reliance on that warranty. ***Id.***; *see* Miss. Code Ann. § 75-2-313(1)(a).

The following express warranty is contained in the City's contract with Mueller, it states, in pertinent part:

> Models 400 and 500 meters are guaranteed to perform to AWWA new meter accuracy Standard as defined in the most current revision for a period of five (5) years from the date of installation.

16

First Amended Complaint, Exhibit 3, Appendix A. The document goes on to state Models 400 and 500 are further guaranteed to perform to "repaired meter accuracy" for a period of fifteen (15) years for 5/8" and 3/4" meters. *Id*. Thus, Mueller *guarantees* that the new water meters will perform to a specific standard for a period of five (5) years. The contract is dated June 2, 2015; thus, the City is still within Mueller's warranty that the water meters will perform to the AWWA's specific standards. The Amended Complaint, therefore, properly contains an express warranty. Furthermore, the Amended Complaint also states that over 50% of the meters Mueller provided are not even reporting at all. First Amended Complaint, pgs. 3-4, paragraph 9. Mueller would be hard pressed to argue that they are meeting the AWWA's new meter accuracy standard when over 50% of the meters fail to report at all. As such, the Amended Complaint sufficiently pleads that Mueller has breached their express warranty.

Lastly, the City must show reliance on the express warranty. It is ludicrous to argue that the City *did not* rely on a guarantee that Mueller's equipment and software would perform at a certain standard when purchasing the product as Mueller's performance was part and parcel of the contract signed by the City with Siemens. As such, the express warranty claim must survive.

## V. The City has Alleged a Claim for Breach of Implied Warranty of Fitness for a Particular Purpose

Mississippi Code Annotated codifies a claim for the implied warranty of fitness for a particular purpose in section 75-2-315. That section states, in pertinent part,

> Except as otherwise provided in this section, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under Section 75-2-316, an implied warranty that the goods shall be fit for such purpose.

17

MISS. CODE. ANN. § 75-2-315. Thus, one must show that "(1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose[,]" in order to recover. ***Watson Quality Ford, Inc. v. Casanova***, 999 So.2d 830, 835 (Miss. 2008).

First, the plaintiff must show that the goods were to be used for a particular purpose and that the seller know of that particular purpose at the time of contracting. In other words, there is no claim for an implied warranty of fitness for a particular purpose "when a product is to be used for its ordinary purpose." ***Id.*** (citing ***Ford Motor Co. v. Fairley,*** 398 So.2d 216, 219 (Miss. 1981)). In ***Watson***, the court affirmed summary judgment in favor of the defendant on the breach of warranty of fitness for a particular purpose claim because the plaintiff "offered no evidence that the van was purchased for anything other than the ordinary purposes for which a van would be used." ***Id.*** Similarly, in ***Fairley***, the court offered no analysis regarding ordinary use and the implied warranty of fitness for a particular purpose, simply stating "[n]either was there any breach of an implied warranty of fitness for a particular purpose since the automobile was purchased for a very ordinary purpose[.]" ***Fairley***, 398 So.2d at 219.

These two cases, cited by Mueller for the proposition that if equipment is used for its ordinary purpose there is no action for breach of the implied warranty of fitness for a particular purpose, do not provide much analysis in determining what constitutes an ordinary purpose versus a particular purpose. Comment two of Section 2-315 of the Uniform Commercial Code, however, does provide some guidance. The comment states that "[a] 'particular purpose' differs

18

from the ordinary purpose for which the goods are used in that is envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." Uniform Commercial Code § 2-315, comment 2. It further explains that "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." *Id.* As such, in this example, the implied warranty would not apply where the shoes are generally selected for the very ordinary purpose of walking on ordinary ground, or the seller was not aware that the purchaser was purchasing the shoes to climb a mountain. However, where the seller knows that a particular pair of shoes is selected for the particular purpose of mountain climbing, and assisted in the selection of that pair of shoes, the implied warranty of fitness for a particular purpose would afford the purchaser relief if the mountain climbing shoes were unfit for the purpose of mountain climbing.

In both *Casanova* and *Fairley*, the vehicles were not purchased for any particular purpose that was communicated to the seller. *Casanova*, 999 So.2d at 835; *Fairley*, 398 So. 2d at 217. Instead, the vehicles were used for the ordinary purpose of carrying passengers or goods from one place to another, much like ordinary shoes used for walking on ordinary ground in the UCC Comments example. *Casanova*, 999 So.2d at 835; *Fairley*, 398 So. 2d at 217. Relying on these two cases, Mueller argues "[l]ike the plaintiff in *Casanova*, Plaintiff offers no facts that establish it purchased Mueller's equipment and software for anything other than ordinary purpose." (*See* Dkt. 25 at p. 15).

19

The City of Cleveland, however, did not purchase these particular meters to simply "measur[e] and report[] water usage" as Mueller asserts. *Id.* Instead, the City purchased these particular meters for the particular purpose of "sav[ing] the City money . . . [and] increas[ing] collections related to water consumption." (*See* Dkt. 3 ¶6). Specifically, the Complaint states that the City entered into the agreement because the system

> would be so efficient that it would result in the system paying for itself over time because of a significant increase in accurate metering of water consumed by citizens of the City as well as fewer employees assigned to the reading of meters, resulting in increased collections related to water consumption.

*Id.* Thus, it is clear from the Complaint that the City upgraded their previous ordinary, working meters to this particular type of meter, provided by Mueller, in order to achieve the particular purpose of more accurate and efficient metering and having fewer employees assigned to read the meters. Accordingly, the First Amended Complaint sufficiently plead that it purchased Mueller's equipment and software for a particular purpose. Mueller is a sophisticated company which, upon information and belief, has partnered with Siemens in the past on multiple energy performance projects. The point of Siemens' agreement with the City was to save the City money on its water meter operations and collect more water revenue to pay for the Mueller meters. These factors form the basis of nearly every energy performance contract. Thus, Mueller was keenly aware of why the City entered into this contract as these are the reasons governmental entities utilize said contracts.

Next, the plaintiff must show that, as a buyer, they relied upon the skill or judgment of the seller to select suitable goods. *See Casanova*, 999 So.2d at 835. To do so, there must be some evidence that the defendant either outright selected or assisted the plaintiff in selecting the

goods in question. *Gardner v. S&S Livestock Dealers, Inc.*, 248 So. 2d 783, 785 (Miss. 1971); *Lacy v. Morrison*, 906 So. 2d 126, 131 (Miss Ct. App. 2004). Here, the City relied on both Siemens and Mueller to select the water meters to be utilized for this project. The City was not in the position to choose this sophisticated technology. As such, Siemens and *Mueller* selected the water meters on behalf of the City and simply informed the City of the type of meter to be used.

Lastly, the plaintiff must show that the goods were unfit for the particular purpose. *Gardner*, 248 So. 2d at 785. As such, the City must show that the water meters provided by Mueller were unfit for saving the City money, providing more accurate metering, and cutting down on the number of meter readers the City had to employ. In multiple places, the First Amended Complaint details the unfit nature of the Mueller meters. *(See* Dkt. 3 ¶ 8 ("The equipment and software furnished by Mueller, . . . has not provided the benefits to the City by way of savings as guaranteed and represented by Siemens and McNeil."); ¶ 9 ("The system is not accurately reporting water consumption on a sustained basis.")). Most notably, perhaps, the City states that "[c]urrently, over 50% of the meters are not reporting, resulting in a loss to the City of tens of thousands of dollars each month." *Id.* at ¶ 9. Thus, with less than 50% of the Mueller meters even working, which, in turn, is costing the City money, the Complaint sufficiently pleads that the meters were unfit for their particular purpose, which was to save the City a large amount of money in the long run. For these reasons this claim should not be dismissed.

## VI. The City has Alleged a Claim for Implied Warranty of Merchantability

The implied warranty of merchantability is codified in Mississippi Code Annotated section 75-2-314. In order to recover under this theory, a plaintiff must show that

(1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) *caused proximately and in fact by the defective nature of the goods,* and (5) notice to the seller of the injury.

*Casanova*, 999 So.2d at 834 (quoting *Vince v. Broome*, 443 So. 2d 23, 26 (Miss. 1983)). Here,

Mueller contends that the City's Complaint "is devoid of any factual content regarding a defect in

a Mueller product to allow the court to draw the reasonable inference that Mueller is liable." (*See*

Dkt. 25 p. 13). The First Amended Complaint, however, states

> 8. At Siemens' recommendation, the City entered into agreements with Defendant, Mueller Systems, LLC, to acquire the equipment Siemens installed, pursuant to the terms and conditions of the contract between Siemens and the City. . . . The equipment and software furnished by Mueller, pursuant to its contracts with the City, is and was at the time of the purchase, defective and has not provided the benefits to the City by way of savings as guaranteed and represented by Siemens and McNeil.

> 9. Since installation of the system, there have been numerous ongoing reporting and revenue issues. The system is not accurately reporting water consumption on a sustained basis. Indeed, the meter reporting accuracy has continued to decline and at the present time, it is less than 50%. It was represented to the City by Siemens, McNeil and other Siemens' employees, both in marketing the system and in the Agreement itself, that the meters would in effect, self-report. The meters were placed in the ground for each water consumer, and were to send a signal out to a repeater, which was to collect the water consumption data and then send that data to the City for billing. Currently, over 50% of the meters are not reporting, resulting in a loss to the City of tens of thousands of dollars each month. Only a bill for the water minimum charge can be sent by the City for the non-reporting meters.

Dkt. 3 pgs. ¶¶ 8 & 9.

Here, the Complaint alleges that "the equipment and software [were] furnished by Mueller."

*Id.* at ¶ 8. The Complaint further explains that less than half of the equipment furnished by Mueller

is properly reporting water consumption. *Id.* at ¶ 9. Thus, as a result of the failure to report from

over half of the equipment and software provided by Mueller, the City is "suffering approximately

$60,000 in lost revenue each month[,] [and] the total lost revenue is approximately 1.5 million

22

dollars to date and continues to rise." *Id.* at ¶ 11. These pleaded facts, i.e. that Mueller's equipment and software sold to the City are not working properly causing the City to lose thousands of dollars, allows this Court to draw a reasonable inference that the deficiencies in Mueller's equipment and software caused the City to lose thousands of dollars. Accordingly, this claim should not be dismissed.

## III.

## CONCLUSION

All of the City's claims should remain against Mueller. The City has sufficiently alleged facts to sustain all claims, including a claim for fraud. The Amended Complaint contains specific allegations of fraud as required under the Federal Rules of Civil Procedure. Moreover, the Economic Loss Doctrine does not bar the tort claims and the additional warranty claims should all remain.

**WHEREFORE PREMISES CONSIDERED**, the City would respectfully request this Court deny Mueller's Motion to Dismiss and remand this cause to the Circuit Court of Bolivar County, Mississippi. Alternatively, the City should be allowed to provide a more definite statement.

JACKS | GRIFFITH | LUCIANO, P.A.
Attorneys for Plaintiff City of Cleveland, Mississippi

By: ___ */s/ Jamie F. Jacks* _____
     Jamie F. Jacks, MS Bar No. 101881
     Daniel J. Griffith, MS Bar No. 8366

23

Of Counsel:

**JACKS | GRIFFITH | LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. (662) 843-6171
Fax No. (662) 843-6176
Email: jjacks@jlpalaw.com
      dgriffith@jlpalaw.com


## **CERTIFICATE OF SERVICE**

    I, Jamie F. Jacks, attorney for Plaintiff City of Cleveland, Mississippi, do hereby certify that I have this date served by electronically filing via the ECF system a true and correct copy of the above and foregoing MEMORANDUM IN SUPPORT OF RESPONSE TO MUELLER'S MOTION TO DISMISS to all counsel who have entered an appearance.

    This, the 4th day of October, 2018.

                       */s/Jamie F. Jacks*
                       JAMIE F. JACKS